UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PATRICK ALEXANDRE,                    )
                                      )
            Petitioner,               )
                                      )
v.                                    )  Civil No. 8-226-B-W
                                      )
STATE OF MAINE,                       )
                                      )
            Respondent                )

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Patrick Alexandre is serving a 40-year sentence for reckless or criminally negligent

manslaughter for the death of Joseph Cloak.  He has filed a 28 U.S.C. § 2254 petition seeking

relief from his conviction and sentence.  "The trial evidence established that Cloak died while

either chained to a tree over a three-day period or soon thereafter after having been buried alive."

Alexandre v. State, 2007 ME 106, ¶ 2, 927 A.2d 1155, 1157.  I recommend that the Court deny

Alexandre 28 U.S.C. § 2254 relief.

*Discussion*

*The Crime[1]*

Alexandre was charged in November 2001 with "intentionally or knowingly" causing the

death of Joseph Cloak and knowingly restraining Cloak "under circumstances which, in fact,

exposed Joseph Cloak to risk of serious bodily injury."  (Indictment, State App. A.)  Cloak

disappeared in 1989.  In 2000 Alexandre, who was facing unrelated criminal charges in Virginia

and hoping to secure some benefit apropos those charges, led law enforcement to Cloak's burial

site on Alexandre's property in Bradford, Maine.  The site was excavated and they found Cloak's

_____

[1]       The following summary is taken from the State's recital of facts in its brief on direct appeal to the Maine
Law Court.  (Appellee Brief at 6-14, State App. B.)

body under a 1,480 pound rock.  He was handcuffed and hog-tied.  There was duct tape wrapped around Cloak's skull from the forehead to the chin with a small opening for his nose.  A forensic examination discovered a number of fractures to his skull and ribs.  It was determined that Cloak could have died from the compression of the boulder.

Alexandre's story, emerging after a string of four interviews, was that a man named Charlie Emery had suspicions that Cloak had or was going to leak the location of a mutual marijuana growing operation. According to Alexandre, Emery hog-tied Cloak in an area where Alexandre and Emery were harvesting marijuana, Cloak remained hog-tied to a tree for three days, and Alexandre and Emery had buried the body using a skidder.  It was Alexandre's contention in his fourth interview that while he was there when Cloak was placed in the hole alive, he refused to bury him.  When Emery threw a large rock on Cloak and again instructed Alexandre to bury him Alexandre asked if he was dead and Emery responded that he must be. So Alexandre buried Cloak.

At trial Alexandre retracted parts of this account, asserting that he was not aware that Cloak was hog-tied until day three and that he was shocked to find Cloak dead when Alexandre arrived at the marijuana plot.  He described how Emery directed Alexandre to put the body in his truck and drive to the Bradford lot.  Alexandre recounted that he dug the hole and buried Cloak because Emery was acting crazy and that he was afraid that Emery would kill him if he refused. He blamed the discrepancies with his earlier interviews on law enforcement pressure.

2

### Sentencing

The Maine Law Court summarized Alexandre's sentence on the manslaughter count[2] as

follows:

> The basic sentence was set at thirty years because the court could not think of "a much worse way of committing the crime of manslaughter." The court found no mitigating factors and significant aggravating factors in Alexandre's prior criminal record and the impact of the crime on the victim. The maximum sentence was set at forty years, with no period suspended. The court concluded that the two sentences should run concurrently because Alexandre's crimes of kidnapping and manslaughter "run together, they are intertwined," and the crimes were "one course of conduct."

Alexandre, 2007 ME ¶¶3-4, 927 A.2d at 1157.

## Alexandre's 28 U.S.C. § 2254 Arguments

### Claims Relating to Alexandre's Exposure to a Manslaughter Conviction

A handful of Alexandre's 28 U.S.C. § 2254 challenges relate to his exposure to a

manslaughter conviction even though manslaughter was not expressly charged in the indictment.

As a consequence, Alexandre asserts that he was not adequately able to defend against this

charge.  In Ground One Alexandre maintains that he received ineffective assistance when trial

counsel failed to argue that there was a constructive amendment to the indictment in violation of

his due process rights.[3]  In his second ground, Alexandre argues that there was a constructive

amendment of the indictment when the trial judge gave the jury instructions on intentional and

knowing murder and then offered the alternative instruction on reckless or criminally negligent

manslaughter, thereby broadening the possible basis for conviction.  Third, Alexandre contends

---

[2]     There was also a conviction and sentence on a kidnapping count which is not relevant because the Maine Law Court concluded that Alexandre was due post-conviction relief on that (but not the manslaughter) conviction.

[3]     This ground also faults counsel for not raising an Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296, 303 (2004) claim.  The merits of an Apprendi/Blakely claim – and, by implication, the prospects of an ineffective assistance claim - are fully addressed in the second section of this opinion.

3

that his Sixth Amendment rights were violated when he was not adequately informed of the

nature and cause of the charges made against him so as to adequately prepare his defense and

that he had a lack of fair notice about the possibility of a manslaughter conviction.[4]  And,

Alexandre argues that his due process rights were infringed when he was convicted of a crime

that he was never given an opportunity to defend against as a consequence of the judge's

manslaughter instructions.

These grounds are all variations on the same theme and the only favorable prospect

Alexandre has as to any of them is to convince this court that there was some constitutional flaw

in the trial court's inclusion of the manslaughter instruction after the close of evidence.[5]

---

[4]      In his third 28 U.S.C. § 2254 ground, Alexandre asserts that there was a violation of the Maine Constitution in that he had a state-created right to not be prosecuted for a Class A offense unless by indictment of the grand jury, which did not consider the charge of manslaughter. This is not a cognizable § 2254 claim in that it is premised on state-law grounds alone.

[5]      The State does not argue that Alexandre failed to adequately apprise the state court of the constitutional nature of his claims for purposes of meeting the 28 U.S.C. § 2254(b) exhaustion requirement.

On this requirement, Baldwin v. Reese explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the " ' "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.' " Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This case focuses upon the requirement of "fair presentation."

541 U.S. 27, 29 (2004).  The Court further observed:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

Id. at 32.  See also Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) ("It is, however, clearly inadequate to simply recite the facts underlying a state claim, where those facts might support either a federal or state claim.")(citing Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).

Alexandre's brief to the Maine Law Court on direct appeal seems to focus solely on state law.  However, as indicated below, in his pro se supplement to the Law Court Alexandre did expressly cite to a Supreme Court case and argued that his trial and appellate counsel were ineffective for not raising this challenge. In the following discussion I address this group of claims by examining if the underlying argument has any § 2254 viability; if the state court did not commit an underlying constitutional violation in delivering the instruction then there is no Strickland v. Washington, 466 U.S. 668, 687-88 (1984) infirmity.

The record reveals that defense counsel expressly, and unsuccessfully, argued against the

manslaughter instruction. The following exchange occurred between counsel and the court prior

to the entry of the jury for instructions:

> THE COURT: Before we bring the jury in, let's just quickly put on record some of the objections.[6]
>
> The State has recommended an instruction for a lesser included offense of manslaughter. The defense has objected to it.
>
> [Defense counsel], anything you want to put on the record regarding that to preserve the record?
>
> DEFENSE COUNSEL: Basically, Your Honor, we just wanted our objection noted. We had a discussion in chambers regarding the requested instruction from the State. The defendant does object to it. It's – the defense's position is that the evidence in this case doesn't warrant such an instruction. It's my understanding, and the Court gave us a Law Court cite that leads the Court to believe that the evidence does warrant that, and we respect the Court's judgment, we'd just like to have the objection noted.
>
> THE COURT: Okay. State – the case is State v. Tomah, the State said if there's any rational basis for the instruction of manslaughter, then the Court is required to give it. And I think there is a basis for the possible finding based upon the Court's – the jury's finding of fact.

(July 11, 2003, Trial Tr. at 1-2; State App. A.)

In his direct appeal to the Maine Law Court Alexandre argued that the manslaughter

instruction was in error because it was not supported by the evidence. Alexandre opined:

> In this case, the trial court erred in instructing the jury on manslaughter. Patrick Alexandre was charge with Murder a Class A crime as defined: A person is guilty of murder if that person "intentionally or knowingly causes the death of another human being." 17-A M.R.S.A. § 201(1)(A). All the evidence presented by the State centered on "intent". There was no evidence that any actions by Mr. Alexandre were negligent or reckless. A person is guilty of manslaughter if that person "…recklessly or with criminal negligence, causes the death of another human being." 17-A M.R.S.A. § 203(1)(A).
>
> During the trial, evidence was presented that Charles Emery killed Joey Cloak. Mr. Alexandre testified that Charles Emery was the only other pe[rson] present when Charlie Emery killed Joey Cloak. Mr. Alexandre testified that he was in fear of his life if he did not follow Charles Emery's instructions. Mr. Alexandre testified that he did not tell Charles Emery to harm Joey Cloak.

---

[6]   The preceding afternoon counsel met in chambers and presumably discussed the objection at greater length.

> The facts of this case clearly show that Mr. Alexandre did not intentional[ly] kill Joey Cloak.  In fact he was found Not Guilty.  The facts also show that Mr. Alexandre was scared for his own life.  There is no evidence that Mr. Alexandre acted recklessly or with criminal negligen[ce]. The Trial Court should not have given the manslaughter jury instruction.

(Brief of Appellant at 45, State App. B.)

The Maine Law Court addressed this challenge and concluded, "the court did not err when it submitted a manslaughter instruction to the jury because there was a rational basis for its decision.  State v. Tomah, 199 ME 109, ¶¶ 14-16, 736 A.2d 1047, 1052-53."  (Mem. Dec. at 1-2, State App. D.)

In his post-conviction proceeding Alexandre raised numerous ineffective assistance claims in his pro se brief not reprised here.  (Mem. Post-conviction Pet. at 1-6, State App. B.)  In a counseled amended petition he also raised a challenge to counsel's performance, but not one relating to the manslaughter instruction.  (1st Am. Post-conviction Pet. at 1, State App. B.)  In an amended pro se petition Alexandre also did not raise this particular challenge to counsel's performance.  (2d Am. Post-conviction Pet. at 1-3, State App. B.)  In yet another pro se amendment he set forth the following ground:

> Petitioner contends that his trial lawyer was ineffective in failing to raise the unconstitutionality of a trial judge reading a lesser included offense instruction to the jury, when the lesser included offense charge and its elements were never included in the indictment as a lesser included offense charged.
> Petitioner also contends that the state attorney lacked the authority to request and receive a manslaughter instruction read to the jury, after the trial evidence was submitted, and against the objection of the defendant.
> Petitioner also contends that the trial judge lacked the authority and jurisdiction in reading a manslaughter instruction to the jury, especially when the charge of manslaughter and its elements were not contained in the indictment against the objection of the defendant.

(Suppl. Am.  Post-conviction Pet. at 3, State App. B.)  While there was some discussion of withdrawing his ineffective assistance grounds at the beginning of the post-conviction hearing,

6

Alexandre elected to press on with all the grounds in his various submissions.  (Post-conviction

Hearing Tr. at 4-12; <u>see</u> <u>also</u> <u>id.</u> at 111.)

With regards to the ineffective assistance claim raised here, the post-conviction court

reasoned:

> Petitioner also argues that his trial counsel was ineffective by failing to object to
> the court's manslaughter instruction to the jury, which Petitioner claims was
> unconstitutional. This claim is totally without merit, having no basis in law. Thus,
> Petitioner's trial counsel was not ineffective for failing to raise this issue at trial.

<u>Alexandre v. State</u>, No. Cr.-05-183, 2006 WL 2959666, *3 (Me. Supr. Oct. 11, 2001).[7]

Alexandre did not raise this ineffective assistance claim in his counseled brief to the

Maine Law Court seeking a certificate of probable cause.  However, in a <u>pro</u> <u>se</u> motion to clarify

Alexandre squarely joined the issue:

> Appellee contends that his trial and appellate attorney were ineffective in
> failing to establish that the court lacked the authority to grant the State's request,
> over the defendant's objection to receive the manslaughter instruction read to the
> jury.  Appellee also contends that his trial and appellate attorney were ineffective
> in not raising the holding of the United States Supreme Court in the case of,
> <u>Spaziano v. Florida</u>, 468 U.S. 447 (1984).  The Supreme Court stated:
> …     As the Court in Beck recognized the rule regarding a lesser included
> offense instruction originally developed as an aid to the prosecution.  If the State
> failed to produce sufficient evidence to prove the crime charged, it might still
> persuade the jury that the defendant was guilty of something.  Id., at 633.  See
> also 3 c. Wright, Federal Practice and Procedure § 515, p. 20, n. 2 (2d ed. 1982).
>      The Court went on to say:
> Although the Beck[8] rule rests on the premise that a lesser included offense
> instruction in a capital case is of benefit to the defendant, there may well be cases
> in which the defendant will be confident enough that the State has not proved
> capitol murder that he will want to take his chances with the jury.  If so, we see
> little reason to require him …… to give the State ……an opportunity to convict
> him of a lesser offense if it fails to persuade the jury that he is guilty of capital
> murder.

---

[7]     As demonstrated above, defense counsel did object to the instruction so the court must mean that there was
no constitutional basis raised.

[8]     <u>Beck v. Alabama</u>, 447 U.S. 625, 633 (1980).

In Appellee's case, the State had requested the manslaughter instruction
and the defendant objected to its being given.  Over the defendant's objection the
Court gave the manslaughter instruction to the jury.

The defendant had defended himself against the crime of intentional and
knowing murder, not reckless and negligent manslaughter.  It was the defendant's
belief that the State had not proved the crime of intentional and knowing murder,
and it was obvious by his objection to the manslaughter instruction, that he
wanted to take his chances with the jury.  It was his trial strategy.  And the State's
attorney should not have gotten the manslaughter instruction from the Court,
especially, over the objection of the defendant. – That does not follow what the
United States Supreme Court held in <u>Spaziano</u>….  Appellee contends that his trial
and appellate counsel were ineffective in failing to show that the instructions
violated the defendant's right to not have the less included offense instruction read
to the jury, especially, over the objection of the defendant. Id., at 456-57.

(Mot. Clarify Ground. at 1- 4, State App. D.)

With respect to Alexandre's objection to the Court's manslaughter instruction at the post-

conviction stage, the Maine Law Court, lumping it with other ineffective assistance of counsel

grounds in the post-conviction petition, concluded: "The post-conviction review justice

concluded there was no merit in any of these claims. To the extent the court's determination is

challenged in the pro se supplemental memorandum filed by Alexandre in this appeal, we also

find no merit in any of these claims." <u>Alexandre</u>, 2007 ME 115, ¶ 9 n.2  927 A.2d at 1158 n. 2.

Under Maine Law manslaughter is a lesser included offense to murder.  <u>See</u> <u>State v.</u>

<u>Tomah</u>, 1999 ME 109, ¶¶ 14, 736 A.2d 1047, 1052 ("Manslaughter is a lesser included offense

of murder.").  "The federal rule is that a lesser included offense instruction should be given 'if the

evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and

acquit him of the greater.'"  <u>Hopper v. Evans</u>, 456 U.S. 605, 611-12 (1982) (quoting <u>Keeble v.</u>

<u>United States</u>, 412 U.S. 205, 208 (1973)). <u>Beck v. Alabama</u> explained:

At common law the jury was permitted to find the defendant guilty of any lesser
offense necessarily included in the offense charged. This rule originally
developed as an aid to the prosecution in cases in which the proof failed to
establish some element of the crime charged. See 2 C. Wright, Federal Practice

8

and Procedure § 515, n. 54 (1969). But it has long been recognized that it can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal.

447 U.S. 625, 633 (1980) (footnote omitted).

Alexandre's argument vis-à-vis the manslaughter instruction is the converse of the arguments made in most prominent cases joining the issue of instructions for intentional murder and manslaughter, in that usually a defendant is crying foul for infringement of his rights because of a failure to allow the jury to consider a lesser included offense of manslaughter. See, e.g., Beck, 447 U.S. at 627 ("We granted certiorari to decide the following question: 'May a sentence of death constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict?' We now hold that the death penalty may not be imposed under these circumstances.") (citation omitted); Paulding v. Allen, 393 F.3d 280, 283 (1st Cir. 2005)("Assuming arguendo that a due process claim of the sort advanced by [the petitioner] remains viable under federal habeas corpus, the most that a noncapital defendant could assert under the Supreme Court's precedent is that a lesser included offense instruction is required if warranted by the evidence.").

The relative novelty of Alexandre's argument is of significance to his 28 U.S.C. § 2254 prospects. The United States Supreme Court explained in Carey v. Musladin:

Under the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1219:

"(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
　　　"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), we explained that "clearly established Federal law" in § 2254(d)(1) "refers to the <u>holdings, as opposed to the dicta,</u> of this Court's decisions as of the time of the relevant state-court decision." <u>Id.</u>, at 412.

549 U.S. 70, __, 127 S. Ct. 649, 652-53 (2006) (emphasis added).

So, in terms of this Court's 28 U.S.C. § 2254(d) analysis, there must be clearly established federal law as determined by a <u>holding</u> of the Supreme Court in support of Alexandre's position that he had a constitutional right to prevent the inclusion of the lesser included instruction.  <u>See</u> <u>cf.</u> <u>Paulding</u>, 393 F.3d at 283.  Alexandre relies on the following passage in <u>Spaziano v. Florida</u> (although in his pleadings he deletes the references to the exposure to capital charges and the role that the statute of limitations issue played):

> As the Court in <u>Beck</u> recognized, the rule regarding a lesser included offense instruction originally developed as an aid to the prosecution. If the State failed to produce sufficient evidence to prove the crime charged, it might still persuade the jury that the defendant was guilty of something. <u>Id.</u>, at 633. See also 3 C. Wright, Federal Practice and Procedure § 515, p. 20, n. 2 (2d ed. 1982). Although the <u>Beck</u> rule rests on the premise that a lesser included offense instruction in a capital case is of benefit to the defendant, there may well be cases in which the defendant will be confident enough that the State has not proved capital murder that he will want to take his chances with the jury. If so, we see little reason to require him not only to waive his statute of limitations defense, but also to give the State what he perceives as an advantage-an opportunity to convict him of a lesser offense if it fails to persuade the jury that he is guilty of capital murder. In this case, petitioner was given a choice whether to waive the statute of limitations on the lesser offenses included in capital murder. He knowingly chose not to do so. Under those circumstances, it was not error for the trial judge to refuse to instruct the jury on the lesser included offenses.

468 U.S. 447, 456-57 (1984) (footnote omitted).  <u>See</u> <u>also</u> <u>United States v. Lopez Andino</u>, 831 F.2d 1164, 1171 -72 (1st Cir. 1987) ("A 'defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'  <u>Keeble v. United States</u>, 412 U.S. 205, 208 (1973).  A

10

defendant, however, also is entitled to forgo the instruction for strategic reasons.  Look v. Amaral, 725 F.2d 4, 9 (1st Cir.1984).")(emphasis added); Look v. Amaral, 725 F.2d 4, 8 -9 (1st Cir. 1984) ("While it is true that no instruction was given regarding lesser included offenses, this was due to the acquiescence of Look's counsel who said to the court, 'I would be willing to state on the record, your Honor, that this case could go to the jury on the question of murder only.' Look argues that the subsequent case of Beck v. Alabama, 447 U.S. 625 (1980), reveals a constitutional right to a lesser included offense instruction on the facts of this case. We disagree. … Beck does not prevent a defendant from foregoing that option for himself as Look did in this case.'").

The problem for Alexandre is that the portion of the Spaziano decision at issue here[9] "clearly establishes" is that -- "on the facts before it," -- if a trial court fails to instruct the jury on lesser included offenses of capital murder it was not error for the trial judge to refuse to give the lesser included offense instruction. 468 U.S. at 449.  The portion of Spaziano highlighted by Alexandre supports the position that a defendant has a right to object to the inclusion of a manslaughter instruction but it does not go so far as to say that it is constitutionally impermissible for the Court to give the instruction (in a non-capital case) if it is an established lesser included offense to murder (as it is in Maine), the prosecution is pressing for the instruction, and the Court concludes that the evidence that came in at trial supports the instruction.

With regards to this 28 U.S.C. § 2254(d)/ Musladin inquiry, the following portion of the "clearly established" discussion by the First Circuit in Paulding is instructive:

---

[9]     The Supreme Court also addressed a challenge to a judge's imposition of a death sentence after the jury had recommended a life sentence.  Spaziano, 468 U.S. at 457-66.

      Under AEDPA, a federal court is precluded from granting habeas corpus relief unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The United States Supreme Court has held that a capital defendant maintains a due process right to receive a lesser included offense instruction if the evidence so warrants, but it has explicitly reserved whether this right extends to noncapital defendants such as Paulding. See Hopper v. Evans, 456 U.S. 605, 611 (1982); Beck v. Alabama, 447 U.S. 625, 638 n. 14 (1979). Because the Supreme Court has not decided whether a noncapital defendant has a due process right to receive such an instruction, some courts, applying AEDPA, have held that a habeas petition predicated on such a claim must be dismissed as not clearly established under federal law. See Mendez v. Roe, 88 Fed. Appx. 165, 167 (9th Cir.2004); Dickerson v. Dormire, 2 Fed. Appx. 695, 696 (8th Cir.2001). But other courts, even after AEDPA's passage, have permitted a noncapital defendant to press such a claim-albeit without explicit consideration of whether their analysis is consistent with AEDPA. See Reeves v. Battles, 272 F.3d 918, 920 (7th Cir.2001); Williams v. Hofbauer, 3 Fed.Appx. 456, 458 (6th Cir.2001).

393 F.3d 280, 283 (footnote omitted); see also Murray v. Giarratano, 492 U.S. 1, 22-23 (1989)

("The unique nature of the death penalty not only necessitates additional protections during

pretrial, guilt, and sentencing phases but also enhances the importance of the appellate process.

…. It is therefore an integral component of a State's 'constitutional responsibility to tailor and

apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty.'

Godfrey v. Georgia, 446 U.S. 420, 428 (1980).") (emphasis added) (citations and footnotes

omitted); Ford v. Wainwright, 477 U.S. 399, 411 (1986)("In capital proceedings generally, this

Court has demanded that factfinding procedures aspire to a heightened standard of reliability.

See, e.g., Spaziano v. Florida, 468 U.S. 447, 456 (1984).") (emphasis added); Campbell v. Coyle,

260 F.3d 531, 541 (6th Cir. 2001) ("This court has further held that, because Beck was a

challenge based on the Eighth Amendment, the Constitution does not require a lesser-included

offense instruction in non-capital cases."); accord Carney v. Fabian, 487 F.3d 1094, 1097 & n. 5 (8th Cir. 2007).

In a footnote, the Paulding Panel indicated: "We followed the latter approach prior to the passage of AEDPA. See Tata v. Carver, 917 F.2d 670, 671-72 (1st Cir.1990). We have not had occasion to consider the issue since AEDPA's enactment." 393 F.3d at 283 n.2. The Panel assumed arguendo that the petitioner's due process claim was viable even though his offense did not expose him to capital punishment and concluded that the state court reasonably determined that the evidence did not warrant the instruction. Id. at 283-84. Alexandre's argument that there was a constitutional infirmity in his instructions is even once removed from the issue in Paulding in that he is making an even more novel Beck-based argument in reliance on Spaziano. But what the above cited precedents establish is that there is disagreement in the lower federal courts as to whether or not the Beck line of cases even apply to non-capital defendants. And it is apparent that if the First Circuit were to revisit this question through the prism of Musladin it would have been considerably less inclined to have addressed the merits of Paulding's Beck claim "arguendo." Given that Alexandre is trying to benefit from what is essentially dicta in Spaziano, it is even clearer that he cannot obtain § 2254(d) review of the merits of his manslaughter instruction predicated claims in the wake of Musladin.

***Claims Relating to the Manslaughter Sentence***

The second group of Alexandre's 28 U.S.C. § 2254 claims turn on the propriety of his manslaughter sentence. At the time of Alexandre's conduct, the statute setting his sentencing exposure read: "In the case of a Class A crime, the court shall set a definite period not to exceed 40 years." 17-A M.R.S.A. § 1252(2)(A) (Supp.1988).

In his sixth § 2254 ground Alexandre argues that there was an Apprendi/Blakely violation when he was sentenced above the maximum 20 years for manslaughter, falling into a 30 to 40 year range for the most heinous and violent crimes, without a jury determination. In his seventh ground he presses an Ex Post Facto claim predicated on the fact that the Maine Supreme Court changed the accepted penalty for a Class A offense to a maximum of 40 years rather than 20 years when it retroactively applied a revised statutory interpretation to Alexandre's crime of conviction four years after he had been sentenced. And, finally, Alexandre posits that he was denied equal protection of the law when the Maine Supreme Court changed this accepted penalty retroactively to all cases for defendants convicted of manslaughter during a discreet period of time between its decision in State v. Lewis, 590 A.2d 149 (Me. 1991) and a 1995 statutory amendment codifying Lewis, thereby applying a statutory interpretation overruling Lewis to Alexandre four years after he had been sentenced.

If that last sentence is hard to follow it is partly because the travel of Alexandre's Apprendi/Blakely premised claim apropos his manslaughter sentence in the post-conviction court and the Maine Law Court is somewhat of a wild legal ride. It is understandable that Alexandre would view the final determination as unfair. The following discussion sets forth the twists and turns of Alexandre's challenge to his sentence.

### State Post-conviction Grounds

By the time that Alexandre got to his post-conviction hearing he had "restricted his arguments at hearing to his ineffective assistance of trial counsel and illegal sentence claims." Alexandre v. State, No. Cr.-05-183, 2006 WL 2959666 (Me. Supr. Oct. 11, 2001).

The relevant discussion by the post-conviction court is as follows:

Finally, Petitioner argues that his trial counsel was ineffective by failing to raise the case of Apprendi v. New Jersey, 530 U.S. 466 (2000), at sentencing. In this case, the United States Supreme Court held that "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.

During the evidentiary hearing, Petitioner's trial counsel indicated that he was generally aware of Apprendi at the time of sentencing, but failed to raise it because he did not think that the crime in question was "heinous," the finding necessary for the court to enhance the sentence beyond the statutory maximum. See State v. Hewey, 622 A.2d 1151, 155 (Me.1993) (citing State v. Lewis, 590 A.2d 149, 151 (Me.1991)) ("Of all Class A offenses, only the 'most heinous and violent crimes committed against a person' are punishable by a maximum period of incarceration above the 'original' limit."). This court finds that Petitioner's trial counsel acted in a manner below that of an ordinary fallible attorney by failing to raise Apprendi on behalf of Petitioner at sentencing. At the time of Petitioner's sentencing on October 2, 2003, Apprendi was the law of the land and, had it been brought to the court's attention, would have resulted in a jury determination of whether or not the crime Petitioner committed was sufficiently "heinous" to warrant a sentence beyond the statutory maximum.

Likewise, Petitioner argues that his trial counsel was ineffective by failing to raise Apprendi or the case of Blakely v. Washington on appeal. 542 U.S. 296. Blakely was decided shortly after Petitioner filed his appeal, but ten months before the Law Court decided the appeal on November 23, 2004. In Blakely, the defendant pled guilty to kidnapping and was sentenced beyond the statutory maximum for the crime after a judicial determination that the defendant had acted with deliberate cruelty, an aggravating factor. Id. at 298. On appeal, the United States Supreme Court, applying the Apprendi rule, held that this sentence violated the defendant's Sixth Amendment right to a jury trial. Id. at 305. At the evidentiary hearing, Petitioner testified that he sent two letters to his trial counsel requesting that his attorney raise Blakely to the court in his appeal. The trial attorney testified at hearing that he never received such a request from his client. Nonetheless, this court concludes that trial counsel should have raised Apprendi and Blakely on appeal, because an ordinary fallible attorney would have recognized that Petitioner's sentence violated the mandates of these two cases.

B. Illegal Sentence

As the court has just examined, the Apprendi and Blakely cases clearly establish that any facts used by a court to enhance a criminal sentence beyond the statutory maximum must be submitted to a jury for determination beyond a reasonable doubt. Although Petitioner's trial counsel failed to bring this case law to the court's attention, it was improper for the court to enhance Petitioner's sentence beyond the statutory maximum without a jury determination that the crime he committed was "heinous" in nature.

In determining that Petitioner's sentence is illegal, the court would like to make two points. First, whether or not Blakely or Apprendi are retroactive is not a factor with regards to Petitioner's sentence. As stated previously, Petitioner was

15

sentenced after <u>Apprendi</u> was decided and his appeal was not final when <u>Blakely</u> issued. Second, the facts of Petitioner's conviction and sentence are similar to the case of <u>State v. Schofield</u>, decided by the Law Court on June 29, 2005. 2005 ME 82, 895 A.2d 927. <u>Schofield</u> was the first case in which the Law Court applied <u>Apprendi</u> and <u>Blakely</u> in overturning a defendant's sentence on appeal. Had <u>Blakely</u> and <u>Apprendi</u> been raised on appeal, this case could very easily have established the precedent that <u>Schofield</u> stands for today. Therefore, it is not necessary for the court to determine the retroactivity of the <u>Schofield</u> case at this time.

<u>Id.</u> at *3 -4.

### *Appeal and Cross-Appeal of Post-Conviction Determination to the Maine Law Court*

With regards to the <u>Apprendi</u>/<u>Blakely</u> arguments, the Maine Law Court opined:

We applied <u>Apprendi</u> and <u>Blakely</u> in <u>Schofield</u>, which involved a defendant who was convicted of manslaughter and sentenced to a term of twenty-eight years, with all but twenty years suspended, under 17-A M.R.S.A. § 1252(2)(A) (Supp.2001), as it had been previously amended in 1995. <u>Schofield</u>, 2005 ME 82, ¶ 2, 895 A.2d at 928-29. The 1995 amendment added the second sentence to the statute (shown in italics):

> In the case of a Class A crime, the court shall set a definite period not to exceed 40 years. *The court may consider a serious criminal history of the defendant and impose a maximum period of incarceration in excess of 20 years based on either the nature and seriousness of the crime alone or on the nature and seriousness of the crime coupled with the serious criminal history of the defendant.*

P.L.1995, ch. 473, § 1 (effective Sept. 29, 1995).

> We recognized in <u>Schofield</u> that the 1995 amendment was intended to codify our decision in <u>Lewis</u>, in which we concluded that section 1252(2)(A)'s authorization of a sentence for "a definite period not to exceed 40 years" actually meant that there were "two tiers of sentences for Class A offenses: up to twenty years for most offenses, and between twenty and forty years for 'the most heinous and violent crimes committed against a person.' " <u>Schofield</u>, 2005 ME 82, ¶¶ 13-15, 895 A.2d at 931-32 (quoting <u>Lewis</u>, 590 A.2d at 151). The 1995 amendment codified the two tiers recognized in <u>Lewis</u> so that "a sentence in excess of twenty years may not be imposed" without a judicial finding of heinousness. <u>Schofield</u>, 2005 ME 82, ¶ 14, 895 A.2d at 931. Applying <u>Apprendi</u> and <u>Blakely</u> to the upper tier sentence imposed against the defendant in <u>Schofield</u>, we concluded that section 1252(2)(A), as amended in 1995, "cannot be constitutionally applied without affording the defendant an opportunity to have the fact-finder of her choice, judge or jury, determine whether, beyond a reasonable doubt, the crime was among the most heinous offenses committed against a person." <u>Id.</u> ¶ 21, 895 A.2d at 933.

The 1995 revision of section 1252(2)(A) "referenced the two-tier approach of <u>Lewis</u>, although it added an additional ground upon which a court may base a sentence exceeding twenty years: the serious criminal history of the defendant." <u>Id.</u> ¶ 15, 895 A.2d at 931-32 (quotation marks omitted). We observed in <u>Schofield</u> that because the 1995 amendment to section 1252(2)(A) had transported the approach of <u>Lewis</u> into the statute, and because Schofield was sentenced for a crime that was subject to the 1995 amendment, we were foreclosed from revisiting <u>Lewis's</u> interpretation of the previous version of section 1252(2)(A). <u>Id.</u>

<u>Alexandre</u>, 2007 ME 106, ¶¶ 17-19. 927 A.2d at 1160.   As for <u>Lewis</u> and Alexandre's

manslaughter sentence the Law Court noted:

It is inescapable that <u>Lewis</u> construed section 1252(2)(A), as it existed prior to its amendment in 1995, as creating two statutory maximums, and that in order for a court to sentence in the upper statutory range of twenty to forty years, there must be a finding of heinousness. If we adhere to this view, it necessarily follows that a finding of heinousness as it relates to Alexandre's crimes, and the imposition of an upper-tier sentence, requires the same jury protections that we required in <u>Schofield</u>, when interpreting the later version of section 1252(2)(A) as amended in 1995.

<u>Alexandre</u>, 2007 ME 106, ¶ 24, 927 A.2d at 1162.  <u>See also</u> <u>Alexandre</u>, 2007 ME 106, ¶ 32, 927

A.2d at 1164 ("In <u>Lewis</u>, we reviewed the statute's legislative history, noting, among other

things, that '[t]he bill, as enacted into law, increased only the maximum sentence for Class A

crimes from 20 to 40 years.' 590 A.2d at 151. Nonetheless, <u>Lewis</u> concluded that the Legislature

intended to 'make available two discrete ranges of sentences for Class A crimes.'  <u>Id.</u>").

However, and this is a big however for Alexandre, the Law Court concluded that <u>Lewis</u>

was wrongly decided.  <u>Alexandre</u>, 2007 ME 106, ¶ 34, 927 A.2d at 1164.   It determined that its

"decision in <u>Lewis</u> lacks vitality and the capacity to serve the interests of justice."  <u>Alexandre</u>,

2007 ME 106, ¶ 40, 927 A.2d at 1166.  "Section 1252(2)(A) (Supp.1988)," the version of the

manslaughter statute under which Alexandre was convicted, "established a single sentencing

range of zero-to-forty years for Class A felonies, not two discrete sentencing ranges of zero to

twenty years and twenty to forty years."  <u>Id.</u>

Of relevance to Alexandre's equal protection argument, the Law Court saw the

'equal protection' concerns from a different angle:

> With the changes wrought by <u>Apprendi</u> and <u>Blakely</u>, a key conceptual underpinning of our decision in <u>Lewis</u> has been removed. We are convinced that continued adherence to the <u>Lewis</u> decision will produce unjust results in the face of the expanded Sixth Amendment rights recognized in <u>Apprendi</u>. Such adherence will require that the narrow cohort of criminal defendants convicted of Class A crimes committed between July 1, 1989, and September 29, 1995, who received upper range sentences and who are not barred by the passage of time from seeking post-conviction review, may become eligible for resentencing many years after they committed and were then convicted of their crimes. Alexandre's case is emblematic. He was convicted in 2003 of crimes that were committed in 1989. The human burdens that a new sentencing trial would place on the immediate family of Alexandre's victim more than eighteen years after the crime are great. <u>See</u> 17-A M.R.S. §§ 1171(2)(B)(2), 1174(1) (2006). In addition, the risk that resentencing may result in unjust sentences because memories have faded or critical witnesses and evidence may no longer be available is real. We are convinced that continued adherence to <u>Lewis</u>, as applied to the discrete class of cases governed by section 1252(2)(A) from its effective date, July 1, 1989, until its revision effective September 29, 1995, would produce results that are not consonant with "fundamental fairness and rationally-based justice." <u>Myrick v. James</u>, 444 A.2d 987, 1000 (Me.1982).

<u>Alexandre</u>, 2007 ME 106, ¶ 37, 927 A.2d at 1165 (footnote omitted).

And, with respect to any argument that Alexandre relied on the <u>Lewis</u> two-tiered

paradigm, the Court reasoned:

> Furthermore, we note the minimal impact of reliance interests that may have come into being under <u>Lewis</u>. <u>See Myrick</u>, 444 A.2d at 1000. "[T]here should be greater readiness to abandon a rule of doubtful adequacy in dispensing exact justice, when the rule to be discarded may not reasonably be supposed to have determined the conduct of litigants." <u>Beaulieu v. Beaulieu</u>, 265 A.2d 610, 613 (Me.1970) (citing BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 150-51 (1921)); <u>see also</u> <u>Hohn v. United States</u>, 524 U.S. 236, 252, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (treating the role of stare decisis as reduced as "a rule of procedure that does not alter primary conduct"). <u>Lewis's</u> two-tier sentencing scheme did not create valid reliance interests in criminals that influenced the manner in which they violated Maine's most serious criminal laws. Notably, the behavior underlying Alexandre's convictions occurred years before the Court's articulation of the two-tier sentencing regime. Our abandonment of past precedent by overruling <u>Lewis</u> will not "interfere with the

18

valid reliance interests of litigants." <u>Adams v. Buffalo Forge Co.</u>, 443 A.2d 932, 935 (Me.1982).

<u>Alexandre</u>, 2007 ME 106, ¶ 39, 927 A.2d at 1166.[10]

And so the Law Court summarized the lack of viability of Alexandre's Sixth Amendment claim as follows:

> Having concluded that, as applied to Alexandre's case, section 1252(2)(A) establishes only a single sentencing range of zero to forty years for Class A crimes, we further conclude that his Sixth Amendment right to trial by jury was not violated. Alexandre's sentences in excess of twenty years were not dependent on "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." <u>Apprendi</u>, 530 U.S. at 490. Because 17-A M.R.S.A. § 1252(2)(A) (Supp.1988) contained only a single statutory maximum of forty years, Alexandre's Sixth Amendment right to trial by jury was not violated by the sentencing judge's conclusion that his sentence should exceed twenty years because of the degree of heinousness associated with Alexandre's crimes. Alexandre has failed to establish that his former attorney was ineffective in this regard.

<u>Alexandre</u>, 2007 ME 106, ¶ 41; 927 A.2d at 1167.[11]

The United States Supreme Court denied certiorari review, <u>see</u> <u>Alexandre v. Maine</u>, 128 S.Ct 1676 (Mar. 17, 2008). This was Alexandre's direct opportunity to obtain review of the Maine Law Court's interpretation of the manslaughter statute under which he was sentenced. <u>See</u>, <u>e.g.</u>, <u>Cunningham v. California</u>, __ U.S.__, 127 S. Ct. 856 (2007) (addressing decision of state court on direct appeal).

So the journey of Alexandre's <u>Apprendi</u>/<u>Blakely</u> challenge was unusual and the final destination certainly was not in his favor or to his liking. However, I cannot identify a basis for 28 U.S.C. § 2254 relief here.  The Maine Law Court's interpretation of the manslaughter statute

---

[10]     Alexandre's victim, Cloak, disappeared in 1989.  <u>Lewis</u> was issued by the Law Court on April 19, 1991. Even if <u>Lewis</u> predated Cloak's death, on a pragmatic level it cannot be said with a straight face that Alexandre might have relied on that decision when he made choices about his conduct vis-à-vis the victim.

[11]     In a motion for reconsideration Alexandre argued that there was a constructive amendment of the indictment, a lack of fair notice, a lack of subject matter jurisdiction, the sentence was improper under <u>Apprendi</u>; and he received ineffective assistance of counsel.

under which Alexandre was convicted is that there was one statutory maximum: 40 years. See

Cunningham, 127 S. Ct. at 871("Other States have chosen to permit judges genuinely to 'exercise

broad discretion … within a statutory range,' which 'everyone agrees' encounters no Sixth

Amendment shoal.")(quoting United States v. Booker, 543 U.S. 220, 233 (2005))(footnote

omitted); Apprendi, 530 U.S. at 481 ("We should be clear that nothing in this history suggests

that it is impermissible for judges to exercise discretion-taking into consideration various factors

relating both to offense and offender-in imposing a judgment within the range prescribed by

statute. We have often noted that judges in this country have long exercised discretion of this

nature in imposing sentence within statutory limits in the individual case."). In Alexandre the

Law Court explained:

> If a statute is unambiguous, we do not look beyond the plain meaning of
> the statute's language to its legislative history. See Ashe v. Enterprise Rent-A-Car,
> 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159; State v. Bjorkaryd-Bradbury, 2002 ME
> 44, ¶ 9, 792 A.2d 1082, 1084; State v. Edward C., 531 A.2d 672, 673 (Me.1987).
> Section 1252(2)(A) stated: "In the case of a Class A crime, the court shall set a
> definite period not to exceed 40 years." 17-A M.R.S.A. § 1252(2)(A)
> (Supp.1988). There is nothing ambiguous or uncertain about this language. Our
> statutory analysis in Lewis should have ended with the statute's plain meaning.

2007 ME 106, ¶ 25, 927 A.2d at 1162; compare Jones v. United States, 526 U.S. 227 (1999). The

fact that the Maine legislature has now amended the manslaughter statute does not provide any

basis for second-guessing Alexandre's overruling of Lewis. See Jones, 526 U.S. at 238 ("This

hardly seems the occasion to doubt that 'subsequent legislative history is a "hazardous basis for

inferring the intent of an earlier" Congress.' Pension Benefit Guaranty Corporation v. LTV Corp.,

496 U.S. 633, 650 (1990) (quoting United States v. Price, 361 U.S. 304, 313 (1960)).").

The bottom line is that in view of the Maine Law Court's revised statutory interpretation

in Alexandre and the fact that Alexandre was sentenced under the version of Maine's

manslaughter statute that set forth a single tiered sentencing scheme, with a forty-year maximum exposure, there was no Sixth Amendment infirmity even if the sentencing court weighed the testimony of the witnesses when arriving at his sentence on the manslaughter charge.  The jury verdict was a sufficient basis for a forty-year term.  Compare Cunningham, 127 S. Ct. at 861-62, 868, 871; Blakely, 542 U.S. at 299-300, 303-04; Apprendi, 530 U.S. at 468-69, 490.

### Conclusion

For the reasons above I recommend that the Court deny Alexandre's 28 U.S.C. § 2254 relief.  I further recommend that a certificate of appealability should not issue in the event Alexandre files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed without ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk

October 30, 2008                    U.S. Magistrate Judge